## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| Kenyatta Jolivet,<br><br>Plaintiff,<br><br>v.<br><br>Union Pacific Railroad Co.,<br><br>Defendant. | Case No. 8:22-cv-00207<br><br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

## INTRODUCTION

1.      Kenyatta Jolivet worked for Union Pacific Railroad Co. as a conductor since 2014. Then, Union Pacific's negligence caused Jolivet to suffer a serious injury, in violation of the Federal Employers Liability Act, 45 U.S.C. § 51, *et seq.* When Jolivet tried to return to work, Union Pacific demanded all his medical records and used the information therein to justify refusing to return him to work, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101.

## PARTIES

2.      Jolivet is an individual who resides and worked for Union Pacific in Rawlins, Wyoming.

3.      Union Pacific, which is headquartered in Omaha, is a railroad carrier engaged in interstate commerce.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

1

5.     This Court has personal jurisdiction over Union Pacific because Union Pacific's headquarters are in Omaha, Nebraska, and because a substantial part of the events or omissions giving rise to Jolivet's claims occurred in this division..

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Jolivet's claims occurred in this division.

## FACTUAL ALLEGATIONS

7.     Jolivet began working for Union Pacific in 2014.

8.     At the time of the incidents at issue in this case, Jolivet was a conductor.

9.     On June 23, 2019, Jolivet was aboard a Union Pacific freight train.  As part of his duties, Jolivet was required to tie handbrakes.

10.     While tying handbrakes on a train, Jolivet noted that it seemed to take extra effort to pull the brakes tight.  Suddenly, the train's cars began to move because of negligence by the train's engineer, defective equipment, or other negligence by Union Pacific.

11.     Jolivet did break his third metacarpal in his right hand while tying handbrakes and as a result of the sudden train movement on June 23, 2019.

12.     Jolivet worked hard to recover.

13.     In January of 2020, Jolivet's doctors released him to return to work without restrictions.

14.     Union Pacific refused to allow Jolivet to return to work unless he produced to it his medical records regarding not only his injury but also other

2

conditions.

15.     Union Pacific lacked a reasonable belief that any medical condition other than Jolivet's injury prevented him from safely doing his job.

16.     Union Pacific required Jolivet to pay for the records it demanded.

17.     Jolivet paid for and produced the records to Union Pacific.

18.     The records Jolivet produced included information regarding a stroke he had suffered.

19.     Union Pacific claimed that Jolivet's stroke caused him to be at a greater than 1% risk of sudden incapacitation.

20.     This claim is untrue.

21.     Union Pacific has adopted a policy of effectively terminating anyone who it believes is at a greater than 1% risk of sudden incapacitation.

22.     This is multitudes more conservative than the policies adopted by any other American employer.

23.     No other American railroad has adopted a similar policy.

24.     The policy is not reasonable.

25.     Union Pacific's basis for its policy is guidance applicable to the Federal Motor Carrier Safety Act.

26.     That guidance was withdrawn before Union Pacific adopted its policy.

27.     It makes little sense to apply guidelines applicable to determining whether someone can drive a commercial vehicle to determine whether someone can work at a railroad.

28.     Union Pacific does not apply the withdrawn guidelines correctly.

29.     Union Pacific's policy was at issue in *Harris v. Union Pacific Railroad Co.*, No. 8:16-cv-381-JFB-SMB (D. Neb.).

30.     Union Pacific's policy was also at issue in *Sanders v. Union Pacific Railroad Co.*, No. 4:20-cv-03023-JFB-SMB (D. Neb.).

<u>CAUSES OF ACTION</u>

COUNT I
NEGLIGENCE AND NEGLIGENCE PER SE IN VIOLATION OF THE FELA

31.     The injuries sustained on or around June 23, 2019, by Plaintiff were caused, in whole or in part, by the negligence and negligence per se of Union Pacific its agents, employees, and officers and in violation of the FELA, 45 U.S.C § 51 *et. seq.*, to wit, Union Pacific was negligent and negligent per se in:

a.  Failing to provide Plaintiff with a reasonably safe place in which to work;

b.  Failing to provide proper and reasonably safe equipment and resources;

c.  Failing to comply with applicable provisions of the code of federal regulations;

d.  Failing to ensure the train had sufficient air to stop any movement;

e.  Failure to provide sufficient training and resources;

f.  Requiring Plaintiff to perform work activities that were unsafe;

g.  Violating the Safety Appliance Act;

h.  Violating the Locomotive Inspection Act;

i.  Other acts of negligence to be discovered.

32.     That because of Defendant's negligence, statutory violations, regulatory violations, and violation of the FELA, Plaintiff has sustained severe and disabling injuries to his hand, including his middle finger.

33.     That as a result of Defendant's conduct, Plaintiff has lost wages, has a permanent loss of his earning capacity, has and will continue to suffer physical pain and suffering, has and will continue to suffer a loss of enjoyment of life, and has and will continue to suffer emotional loss.

34.     That in an effort to treat his injuries, Plaintiff has incurred in the past and will incur in the future expenses for hospital, nursing and other medical care, the exact amount of which cannot be accurately estimated at this time.

## COUNT II
## DISABILITY DISCRIMINATION, IN VIOLATION OF THE ADA

35.     Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of "disability" in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

36.     At all relevant times, Jolivet was an individual with a "disability" under each of the ADA's three definitions of the term.

37.     Jolivet is a qualified individual under the ADA.

38.     Union Pacific discriminated against Jolivet on the basis of disability when it (a) required him to pay for the medical records it demanded, and (b) refused to allow him to return to his job following his approved medical leave of absence.

5

39.     Because Union Pacific violated 42 U.S.C. § 12112, Jolivet has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. Jolivet is also entitled to attorneys' fees and costs incurred in connection with these claims.

40.     Union Pacific committed the above-alleged acts with reckless or deliberate disregard for Jolivet's rights. As a result, Jolivet is entitled to punitive damages.

## COUNT III
## FAILURE TO ACCOMODATE, IN VIOLATION OF THE ADA

41.     At all relevant times, Jolivet was an individual with a "disability" under of the ADA's three definitions of the term.

42.     Union Pacific was aware of Jolivet's disability.

43.     Discriminating against a qualified individual with a disability includes:

> [N]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]

42 U.S.C. § 12112(b)(5)(A).

44.     If Union Pacific believed that Jolivet's disability prevented him from performing any essential function of his job, it had a duty to explore whether a reasonable accommodation existed that would allow Jolivet to perform the essential functions of his job.

45.     Union Pacific failed to engage with Jolivet in the interactive process, and failed to offer reasonable accommodation to Jolivet.

6

46.     Because Union Pacific violated 42 U.S.C. § 12112, Jolivet has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. Jolivet is also entitled to attorneys' fees and costs incurred in connection with these claims.

47.     Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Jolivet's rights and safety. As a result, Jolivet is entitled to punitive damages.

## COUNT IV
## IMPERMISSIBLE MEDICAL EXAMINATION, IN VIOLATION OF THE ADA

48.     At all relevant times, Jolivet was an individual with a disability under the ADA.

49.     Section 12112(d)(1) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including certain medical examinations and inquiries.

50.     Section 12112(d)(4) of the ADA prohibits employers from "requir[ing] a medical examination and [from]. . . mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity"

51.     Union Pacific discriminated against Jolivet on the basis of disability by requiring him to undergo a fitness for duty examination, in violation of 42 U.S.C. § 12112(d)(4).

52.     Because Union Pacific violated 42 U.S.C. § 12112, Jolivet has suffered

7

and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. Jolivet is also entitled to attorneys' fees and costs incurred in connection with these claims.

53.     Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Jolivet's rights and safety. As a result, Jolivet is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Jolivet prays for judgment against Union Pacific as follows:

54. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the FELA and/or ADA;

55. For an injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

56. For an award of damages arising from pain and suffering, loss of past and future income, loss of earning capacity, emotional distress, and other compensatory damages in an amount to be determined by the trier of fact;

57. For the maximum amount of punitive damages allowed by statute;

58. For an award of pre-judgment interest, as provided by law;

59. For an award of Jolivet's costs, disbursements and attorneys' fees pursuant to law;

60. For all relief available under the ADA;

61. For such other and further relief available by statute; and

62. For such other and further relief as the Court deems just and equitable.

Dated: _June 10, 2022_____          By _/s/ David L. Tomenes_____

**CASEY JONES LAW FIRM**
Nick Thompson, Esq.
3520 Cherryvale Avenue
Suite 83
Appleton, WI 54913
(757) 477-0991
nthompson@caseyjones.law

and

**BOLT HOFFER BOYD LAW FIRM**
Joseph M. Sayler, Esq.
David L. Tomenes, Esq.
Attorney for Plaintiff
2150 Third Avenue, Suite 350
Anoka, Minnesota  55303
(763) 406-7000
joseph.sayler@bolthoffer.com
david.tomenes@bolthoffer.com

9